UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOREN O.E. NIKOLAI HALSTEN,

                Plaintiff,

v.

PROMPT PRAXIS LABORATORIES
LLC AND LISA MCCHESNEY-HARRIS.

                Defendants.

CIVIL ACTION NO. 1:22-CV-10750

## DEFENDANTS' MEMORADUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

This case arises out of Plaintiff's ("Plaintiff" or "Halsten") employment with Prompt Praxis Laboratories LLC ("Prompt Praxis"); a small start-up company founded by Lisa McChesney-Harris ("McChesney-Harris") (Prompt Praxis and McChesney-Harris collectively, the "Defendants"). Plaintiff was not a Massachusetts resident, nor was Prompt Praxis doing business in the Commonwealth, when she engaged in the alleged protected activity covered by this action. Plaintiff was employed by Prompt Praxis from January 7, 2019 to May 10, 2021. In Plaintiff's original complaint, she alleged four counts against the Defendants. Two of the counts, Count I and II, have been dismissed by the Court against McChesney-Harris (*see* **Exhibit 1-Court ruling on Defendants' Partial Motion to Dismiss issued on July 11, 2023**).

Defendants are entitled to summary judgment as a matter of law on the remaining counts of Plaintiff's complaint because the facts demonstrate that: 1) Plaintiff

1

was not a Massachusetts resident at the time of her alleged protected activity, 2) Plaintiff was paid effectively for all commissions owed to her; and 3) there is no link between Plaintiff's termination and her alleged protected activity.

## A. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to access the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**.  A "genuine" issue only exists where the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Douglas v. J.C. Penney Co., Inc., 422 F. Supp. 2d at 271 (D. Mass. 2006) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).  A "material" fact "has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Douglas, 422 F. Supp. 2d at 271 (quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir.1996)).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. Douglas, 422 F. Supp. 2d at 272.  This burden may be met by either submitting affirmative evidence that negates an essential element of the opponent's case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  The burden then "shifts to the nonmoving party, with respect to each issue on which he has the

burden of proof, to demonstrate that a trier of fact reasonably could find in his favor."

Douglas, 422 F. Supp. 2d at 272 (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 661

(1st Cir. 2000)).  The law is clear that, Plaintiff, as the non-movant, must go beyond her

pleadings and designate specific facts, supported by evidence, showing that there is a

genuine issue for trial in order to defeat Defendants' motion for summary judgment.

See Celotex Corp., 477 U.S. at 323.  To meet this burden, Plaintiff cannot rely merely

on "conclusory allegations, improbable inferences, and unsupported speculation."

Douglas, 422 F. Supp. 2d at 272 (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166,

173 (1st Cir. 2003)).  The court must analyze this evidence by "view[ing] the facts in the

light most favorable to the non-moving party, [and] drawing all reasonable inferences in

that party's favor."  Douglas, 422 F. Supp. 2d at 272 (quoting Pac. Ins. Co. v. Eaton

Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004) (quotation omitted)).

    Where, as here, Plaintiff's allegations simply lack support in the evidence

adduced during discovery, summary judgment should be granted in Defendants' favor.

    **1.  Defendants are Entitled to Summary Judgment on Count I, which alleges Retaliation under M.G.L.c. 151(b)**

        **a.  Plaintiff is not Entitled to the Protection of Massachusetts Law.**

    Plaintiff was not a resident of Massachusetts until March 2020. **(Exhibit 2- Email

02Feb2020 - Move Date LNH).** The Count alleging retaliation under M.G.L.c 151(b) is

based upon alleged protected activity engaged in during 2019. During such time,

Plaintiff lived in Nashville, Tennessee and New York, NY. **Deposition of Plaintiff, pg. 7,

lines 2-8.** Prompt Praxis had no business ties to the Commonwealth; having no

business headquarters or business activity.

Given the Plaintiff's multiple residences during her employment with Prompt Praxis, the application of Massachusetts law to Plaintiff's claims is subject to a balancing test to determine which state has a "more significant relationship" to the parties." Nierman v. Hyatt Corp., 441 Mass. 693, 697, 808 N.E.2d 290, 293 (2004) (discussing that Massachusetts law did not apply even when the Plaintiff was a resident of Massachusetts as Texas had a more significant relationship to the transaction and the parties). Other than Plaintiff's temporary residence in Massachusetts, there are no ties to the Commonwealth that are linked to her claims of retaliation under 151(b). Plaintiff does not allege any of the alleged illegal activity in her complaint has ties to Massachusetts. She states that the alleged sexual harassment occurred in Illinois, where Prompt Praxis is located and San Diego, California where Prompt Praxis sent Plaintiff for a conference. **Plaintiff Deposition, pg. 11-12**.

The individual that Plaintiff alleges retaliated against her, McChesney-Harris, would have taken any alleged retaliatory action against Plaintiff in Illinois. Indeed, Prompt Praxis never had any significant business connection with Massachusetts. **McChesney-Harris Depo. pg. 7, lines 6-24.** Given the clear lack of connection to Massachusetts, Plaintiff's decision to commence this action in Massachusetts plainly was to take advantage of the Commonwealth's more favorable laws regarding Wage Act damages and retaliation. The statutory scheme in Illinois (Prompt Praxis' corporate place of business), is objectively far less favorable to Plaintiff's litigation aims than that of the Commonwealth. [1]Based on these facts, Plaintiff is not entitled to take advantage of the Commonwealth's anti-discrimination and retaliation laws.

---

[1] The Illinois Wage and Payment Act, 820 Ill. Comp. Stat. Ann. 115, does not allow for treble damages, instead allowing for only 5% of the underpayment for each month that the employee was underpaid; The

**b. Plaintiff Cannot Prove a *prima facie* Case of Retaliation under M.G.L.c. 151(b)**

*Even if* Plaintiff was entitled to take advantage of the Commonwealth's laws, Plaintiff cannot make out a *prima facie* case of retaliation under M.G.L.c. 151(b). In order to prove her case, Plaintiff must 1) engage in protected conduct, 2) show that she suffered some adverse action and 3) prove that there was a causal connection between the protected conduct and the adverse action. Mole v. Univ. of Massachusetts, 442 Mass. 582, 814, N.E.2d 329 (2004). While Plaintiff engaged in protected activity by complaining of alleged sexual harassment, she did not live in the Commonwealth at the time of the protected activity, and by the analysis above, she is not entitled to protection under Massachusetts law. Further, if that was not enough, Plaintiff cannot prove that there was any causal connection between her protected activity and her termination.

Plaintiff's termination during the pandemic was due both to the impaired "financial health of the organization" and Plaintiff's "not selling and being accountable for selling to new business." **McChesney-Harris Depo, pg. 158, lines 1-9.** Moreover, the decision to terminate Plaintiff was made between "early to mid-April", while discussions around terminating Plaintiff "started in probably March" 2021. **McChesney-Harris Depo, pg. 158, lines 14-24.** Plaintiff did not indicate any concerns connected to retaliation until April 27, 2021; months after discussions regarding Plaintiff's termination began. Thus, Plaintiff cannot rely on her complaint's temporal proximity to the termination date to prove her claim. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 177 (1st Cir. 2015) (ruling that the Plaintiff's complaint's proximity to an alleged adverse

---

Massachusetts Wage Act, MGL 149 § 148 allows for treble damages, as well as attorney's fees.

action did not establish causation because Defendant did not know of Plaintiff's

protected conduct at the time of the adverse action).

Defendants thoroughly investigated Plaintiff's complaints in both 2019 and 2021.

Starting with the 2019 investigation, the Defendants investigated Plaintiff's claims that

she had been sexually harassed and found no merit to her allegations. Specifically, it

was found that her allegations "were difficult to substantiate," and that "several

anecdotal situations (not relevant to Loren [Plaintiff]'s assertions)...called into question

Halsten's motivations and track record of credibility." **Exhibit 3-Aragon Investigation**

**Notes 2019.** Plaintiff's allegations only included three off-the-cuff comments. Plaintiff

alleged that 1) Aragon made a comment of a salacious nature about dessert while

carpooling with Plaintiff, 2) Aragon made a comment asking why Plaintiff did not wear a

skirt while dining out at a sales conference, and 3) Aragon made a facetious comment

noting both that it was difficult to sign a certain potential client and asking "who had to

sleep with [the client]" to change their minds. **Exhibit 3-Aragon Investigation Notes**

**2019.**

Halsten admitted that she did not think Aragon wanted to sleep with her and

waited around 10 months to report the comments (which could not be substantiated)

just as a new salesperson was hired; possibly threatening her position. The comments

alleged were in the nature of workplace banter that did not rise to the level of a pattern

and practice of sexual harassment. Ponte v. Steelcase Inc., 741 F.3d 310 (1st Cir.

2014)(where employee's protected conduct of complaining to Human Resources about

male supervisor's alleged sexually harassing conduct did not have a causal connection to her termination).[2]

Even though Defendants found nothing in their investigation to substantiate Plaintiff's complaint (which included interviewing all witnesses identified by Plaintiff, and the alleged harasser), Defendants implemented measures to ensure that all employees understood the full ambit of the concept of sexual harassment. These measures included: 1) Aragon being counseled internally regarding the nature and content of his comments and being warned that he needed to avoid comments that may make others uncomfortable, 2) registering Aragon in an third-party sensitivity and communication class, 3) retraining the entire Prompt Praxis staff on sensitivity in the workplace, and 4) updating the Prompt Praxis harassment policy to encourage both timely feedback to the individual being accused and timely documentation of incidents. **Exhibit 3-Aragon Investigation Notes 2019.** Notably, Plaintiff was separated from Aragon and never saw him after she raised concerns regarding alleged sexual harassment against him. **Halsten Depo, pg. 20, lines 15-21.**

Despite the lack of substantiation of Plaintiff's allegations and the prompt remedial measures that Prompt Praxis took to make Plaintiff feel comfortable in the workplace, Plaintiff raised concerns of retaliatory conduct on April 27, 2021 (after the decision to terminate Plaintiff had been made). Plaintiff asserted that the Defendants

---

[2] The court in this matter noted that the Plaintiff's performance problems began before the harassment took place, and complaints about her performance were from employees other than supervisor. Her supervisor had little face to face contact with Plaintiff in this matter and arranged for the Plaintiff to get performance assistance. This set of facts is similar to the current matter as Plaintiff only interacted with Aragon on a handful of occasions, normally working remotely and not having contact with any Prompt Praxis employees. Further, her performance issues arose before the harassment allegedly took place, with Plaintiff only signing three clients. Her poor performance (along with Prompt Praxis' financial state) had no causal connection to the alleged harassment, and serves as a legitimate business reason for her termination.

were "retaliating" against her for raising concerns about sexual harassment in 2019. Plaintiff also alleged that Defendants were impeding her "professional progress" due to her 2019 complaint. A second thorough investigation found that Plaintiff had impeded her own professional progress by not interacting with the Marketing team, and not sharing sales information with either Management or the Marketing team. **Exhibit 4-Investigation Notes, 2021.**

The 2021 investigation, conducted by Prompt Praxis Human Resource Manager Rebecca Kolleng ("Kolleng"), also found that Plaintiff had "an alarming lack of progress" in her client development (i.e., selling services to new or existing clients) or developing an "understanding of PPL [Prompt Praxis]'s service capabilities." **Exhibit 4-Investigation Notes, 2021.** These findings came after the Defendants' CEO and founder "Lisa [McChesney-Harris] drafted an email with goals and expectations to rectify [Plaintiff's] behavior." **Exhibit 4-Investigation Notes, 2021; Exhibit 5-Commissions 2020 Goals 2021 Email 18Jan2021.**

Plaintiff was not subject to any retaliatory or discriminatory behavior, but, rather, was terminated due to her poor performance during a financially precarious moment in this company's history. **Exhibit 6-Plaintiff's Responses to Defendants' Requests for Admission, Response 9, pg. 2.**[3] For a wide variety of non-discriminatory and non-retaliatory business reasons, Plaintiff cannot prove a *prima facie* case of retaliation under M.G.L. 151(b). Therefore, Count I of Plaintiff's complaint must be dismissed with prejudice as to Prompt Praxis.

---

[3] Plaintiff's job description specifies that she "develops strategic plans for new client acquisition and revenue growth." **Exhibit 7-Position Description: National Sales and Business Development Manager.** When this did not come to pass, Plaintiff was terminated from her role for not meeting this expectation and to preserve Prompt Praxis' financial health.

**c. <u>Defendants are Entitled to Summary Judgment on Count II, which alleges Retaliation under 42 U.S.C. § 2000e-(3)(a)</u>**

**a. <u>As a matter of law, Plaintiff Cannot Prove a *prima facie* Case of Retaliation under 42 U.S.C. § 2000e-(3)(a)</u>**

Plaintiff cannot establish a *prima facie* case of retaliation under Title VII. To establish a prima facie case of retaliation under Title VII, Plaintiff must show: "(1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) that a 'causal nexus exists between the protected [conduct] and the adverse action." <u>Lopez-Hernandez v. Terumo Puerto Rico LLC</u>, 64 F.4th 22, 31 (1st Cir. 2023). While Plaintiff engaged in protected activity by alleging sexual harassment in 2019; she cannot prove that her 2021 termination (the only adverse employment action alleged in this matter) is linked to such protected activity. There is no factual, causal nexus between Plaintiff's protected conduct and her termination.

As noted previously, when Plaintiff raised concerns related to alleged sexual harassment in 2019, Prompt Praxis promptly and thoroughly investigated Plaintiff's concerns. Even though they found Plaintiff's claims, "difficult to substantiate," and that "several anecdotal situations (not relevant to Loren [Plaintiff]'s assertions)...called into question Halsten's motivations and track record of credibility," Prompt Praxis took immediate remedial action to make all employees at Prompt Praxis feel safe. **Exhibit 3-Aragon Investigation Notes 2019.** These measures included: 1) Aragon being counseled internally regarding the nature and content of his comments and being warned that he needed to avoid comments that may make others uncomfortable, 2) registering Aragon in a third-party sensitivity and communication class to assist his awareness of workplace comments, 3) retraining the entire Prompt Praxis staff on

sensitivity in the workplace, and 4) updating the Prompt Praxis harassment policy.

**Exhibit 3-Aragon Investigation Notes 2019.** Following this investigation, Plaintiff was not subject to (nor does she allege she was subject to) any adverse action in 2019 or 2020. *See* **Complaint, ¶¶11-20.**

On April 27, 2021, long after Prompt Praxis had already made the decision to terminate Plaintiff due to performance and fiscal concerns, Plaintiff raised concerns that she was not being promoted or receiving raises due to her complaint of sexual harassment in 2019. Defendants investigated Plaintiff's concerns and found them to be both without merit and unsubstantiated. *It is important to note that Plaintiff was the highest paid employee of Prompt Praxis as of the time of her termination, despite bringing in minimal new sales in 2020 and no new sales in 2021.* **Exhibit 6-Plaintiff's Responses to Defendants' Requests for Admission, Response 12, page 3.**

At the conclusion of this investigation, it was found that Plaintiff had not been subject to retaliatory treatment, and that her termination from Prompt Praxis was justified due to "an alarming lack of progress" in her client development (i.e. selling services to new or existing clients) or "understanding of PPL's service capabilities." **Exhibit 4-Investigation Notes, 2021.**[4] In sum, Plaintiff was not subject to any retaliatory or discriminatory behavior, but instead was not promoted, did not receive a raise and was terminated due both to her inadequate performance and the need for Prompt Praxis to secure the financial footing necessary to survive as a startup company during the Pandemic. Moreover, Plaintiff's job description specified that she "develops strategic plans for new client acquisition and revenue growth." **Exhibit 7-Position**

---

[4] This was after "Lisa [McChesney-Harris] drafted an email with goals and expectations to rectify [Plaintiff's] behavior." **Exhibit 5-Commissions 2020 Goals 2021 Email 18Jan2021.**

**Description: National Sales and Business Development Manager; McChesney-Harris Dep. pg. 23, lines 5-9.** When this did not come to pass, Plaintiff was terminated for not meeting reasonable business expectations and in an effort to preserve Prompt Praxis' financial health. For all the forgoing reasons, Plaintiff cannot prove a *prima facie* case of retaliation under Title VII and Count II of Plaintiff's complaint must be dismissed with prejudice as to Prompt Praxis.

### d.  Defendants are Entitled to Summary Judgment on Count III, which alleges Failure to Pay Wages Owed under M.G.L.c. 149 §148.

### a.  Plaintiff is not Entitled to the Protection of Massachusetts Law.

It is undisputed that Plaintiff was not a resident of Massachusetts until March 2020. **Exhibit 2- Email 02Feb2020 - Move Date LNH; Plaintiff's Response to Defendants' Requests for Admission, Response 16, Page 4.** Plaintiff admits that she was not paid wages as a Massachusetts resident in 2019. During this time, Plaintiff lived in Nashville, Tennessee and New York, NY. **Deposition of Plaintiff, pg. 7, lines 2-8**. Prompt Praxis has little to no business ties to the Commonwealth, having no employees, business headquarters/locations or any other business presence.

Given the Plaintiff's multiple residences during her employment with Prompt Praxis, the application of M.G.L.c. 149 § 148 (hereinafter, "Massachusetts Wage Act") to Plaintiff's claims is subject to a balancing test to determine which state has a "more significant relationship" to the parties." Nierman v. Hyatt Corp., 441 Mass. 693, 697, 808 N.E.2d 290, 293 (2004) (discussing the fact that Massachusetts law did not apply, even when the Plaintiff was a resident of Massachusetts, as Texas had a more significant relationship to the transaction and the parties). Other than Plaintiff's temporary residence in Massachusetts, there are no business ties to the Commonwealth alleged in

the Plaintiff's complaint nor found during discovery. Plaintiff's complaint of non-payment

of commission wages are directly linked to actions and decisions made in Illinois, not

Massachusetts. More specifically, when Plaintiff reported alleged nonpayment of wages,

she was living in New York, not in Massachusetts. **Complaint ¶¶16-20; Exhibit 2-**

**Email 02Feb2020 - Move Date LNH; Exhibit 6-Plaintiff's Response to Defendants'**

**Requests for Admission, Response 16, Page 4.** Moreover, the individual that she

alleges did not properly pay her wages, McChesney-Harris, acted in Illinois. Indeed,

Prompt Praxis has little to no business connection with Massachusetts. **McChesney-**

**Harris Depo. pg. 7, lines 6-24.** Based on these factors, it is clear that Plaintiff's was

motivated to commence this action in Massachusetts due to the Commonwealth's more

favorable laws regarding wages and damages as contrasted with those existing in

Illinois. **See Illinois Wage and Payment Act, 820 Ill. Comp. Stat. Ann. 115** [5]

> ### b. Plaintiff Cannot Prove her *prima facie* Case of Defendants' Alleged Failure to Pay Wages Pursuant to the Massachusetts Wage Act.

*Even if* Plaintiff could establish standing under Massachusetts law, she cannot

prove her *prima facie* case for Defendants' alleged failure to pay wages pursuant to the

Massachusetts Wage Act since Defendants have paid Plaintiff for all commissions

owed. Plaintiff attempts to create a triable issue of fact by asserting that she was owed

commissions from KRS Biopharmaceuticals("KRS"). This attempt by Plaintiff is fatally

flawed. Plaintiff never made contact with any decision makers at KRS, and she *admitted*

during an investigation into this allegation that any issue with payment "was resolved."

**Exhibit 4-Investigation Notes 2021.** As to her claim that she was owed commissions

---

[5] The Illinois Wage and Payment Act, 820 Ill. Comp. Stat. Ann. 115, does not allow for treble damages, instead allowing for only 5% of the underpayment for each month that the employee was underpaid.

on KRS, it has been established that Plaintiff did not secure any business from KRS. Indeed, Plaintiff was wholly unaware that KRS had new owners and that Prompt Praxis already had a contract with these new owners. In short, Plaintiff tried to take credit falsely for nonexistent sales. Compounding Plaintiff's lack of credibility is the fact that she now alleges that she is owed commissions from seven different companies; in contrast to the one (KRS) about which she originally raised concerns.

Plaintiff never raised concerns over missing commissions during her employment with Prompt Praxis except once in 2019 (promptly corrected) and the overtly false claim to commissions in 2021. Plaintiff's sales incentive agreement states, "all commissions [paid to Plaintiff] will be considered final after 30 days." **Exhibit 8-Sales Incentive Plan Agreement.** If Plaintiff were to have a "question, problem or disagreement with the amount of commission paid on a sale, be sure to submit the details in writing to [McChesney-Harris.]" **Exhibit 8-Sales Incentive Plan Agreement.**

It appears that Plaintiff's main issue, and why she now contests that she is owed commissions from seven companies (instead of one)[6] is that she did not receive copies of business invoices so that she could cross-reference her commissions. In point of fact, Plaintiff was given a worksheet specifically for the purpose of validating her commission amounts. Plaintiff specifically admitted that she used this spreadsheet to validate her commission payments. **Halsten Dep. pg. 75, lines 1-9 ("A: I believe the commission worksheet you're referencing where it says like the percentage I'm paid and the amount that I'm paid of that percentage. I wasn't paid correctly for that, and so**

---

[6] Plaintiff has further changed the number of clients that she is owed commissions from, now stating that she is owed commissions from three clients, rather than the original seven. **Exhibit 6-Plaintiff's Responses to Defendants' Requests for Admissions, Response 13, pg. 3.**

**that—that was raised.")** Given the fact that she had the worksheet at her disposal, and knew, through her signed sales incentive plan agreement, that she needed to raise concerns related to commission payments within 30 days, it is highly suspect that she did not raise any formal complaints until she hadn't made any sales to new clients for almost a year and a half. Plaintiff did not raise any concerns related to pay at any other time other than the end of 2019 and April 2021.

Even if Plaintiff is being truthful about the commissions that she is owed (which she is probably not), awarding Plaintiff missing wages would allow for a windfall to the Plaintiff, as the Plaintiff has already recovered in a previous action for wages she alleges were owed to her. Plaintiff, upon her termination from Prompt Praxis, filed a suit against Prompt Praxis in Boston Municipal Court ("BMC") to recover, "$4,678.34 plus $100 court costs…requesting Triple Damages (three times the amount owed to Miss Halsten) .…Pursuant to the Massachusetts Wage Act, [Plaintiff] requests to be paid the amount of $14,035.02." **Exhibit 9-BMC Small Claims Complaint.** The Plaintiff won her case at the BMC level based on unpaid wages and commissions under the Massachusetts Wage Act and collected a total of $2,675.85.[7] **Exhibit 10-BMC Judgment for Plaintiff.** Thus, to allow Plaintiff to recover again based on the same action would give the Plaintiff two bites at the same apple. Plaintiff already had her chance to recover any wages or commissions that she was owed upon her termination and did so at the BMC level. Allowing further collection under the Massachusetts Wage Act would allow for a windfall to Plaintiff, and only allow for an inequitable result to the

---

[7] The amount was a total of interest on her alleged missing wages and commissions ($48.84 on $4678.34 as wages and commissions alleged by Plaintiff; this ruling was prior to *Reuter v. City of Methuen*, in which treble damages were ruled to be the damages marker over interest), $125.53 in costs, and $2,500 in attorney's fees.

Defendants who have already paid Plaintiff in full. As such, Count III of Plaintiff's

Complaint should be dismissed with prejudice as to all Defendants.

C. **Defendants are Entitled to Summary Judgment on Count IV, which alleges Retaliation under M.G.L.c. 149 §148A.**

1. **Plaintiff is not Entitled to the Protection of Massachusetts Wage Act Nor its Retaliation Protections.**

It is undisputed that Plaintiff was not a resident of Massachusetts until March

2020. **Complaint ¶¶16-20; Exhibit 2- Email 02Feb2020 - Move Date LNH; Plaintiff's**

**Response to Defendants' Requests for Admission, Response 16, Page 4.** Plaintiff

admits that she was not paid wages as a Massachusetts resident in 2019. During this

time, Plaintiff lived in Nashville, Tennessee and New York, NY. **Deposition of Plaintiff,**

**pg. 7, lines 2-8.** Other than Plaintiff sporadically living in Massachusetts, Prompt Praxis

has no business ties to the Commonwealth. Prompt Praxis maintains no staff in the

state, has no business premises or indeed, any business presence in the

Commonwealth.

Given the Plaintiff's multiple residences during her employment with Prompt

Praxis, the application of M.G.L.c. 149 § 148A to Plaintiff's claims is subject to a

balancing test to determine which state has a "more significant relationship" to the

parties." Nierman v. Hyatt Corp., 441 Mass. 693, 697, 808 N.E.2d 290, 293 (2004)

(discussing that Massachusetts law did not apply even when the Plaintiff was a resident

of Massachusetts as Texas had a more significant relationship to the transaction and

the parties). Other than Plaintiff's temporary residence in Massachusetts, there are no

ties to the Commonwealth alleged in this complaint nor found through discovery.

Plaintiff does not assert that any of the alleged illegal activity specified in her complaint

has ties to Massachusetts; including her complaint of missing wages in 2019 and 2021.

Further, Plaintiff did not live in Massachusetts at the time of her complaint of missing

wages in 2019. At the time, she was living in New York, NY, with her pay being issued

according to Illinois law. **Complaint ¶¶16-20; Exhibit 2- Email 02Feb2020 - Move**

**Date LNH; Plaintiff's Response to Defendants' Requests for Admission,**

**Response 16, Page 4.**  Plaintiff's allegations of retaliation in 2021 relate only to the

2019 concerns. During such time, she was not being paid as a Massachusetts

employee and had no nexus to the state of Massachusetts. **Complaint ¶¶16-20;**

**Exhibit 2- Email 02Feb2020 - Move Date LNH; Plaintiff's Response to Defendants'**

**Requests for Admission, Response 16, Page 4**.

Further, the individual that she alleges did not pay her wages, McChesney-

Harris, would have taken any wage action in Illinois. Indeed, Prompt Praxis has had little

to no business connection with Massachusetts. **McChesney-Harris Depo., pg. 7, lines**

**9-24.** Given this lack of connection to Massachusetts, Plaintiff's decision to commence

this action in Massachusetts was plainly to take advantage of the Commonwealth's

more favorable laws regarding management of wages instead of suing in Illinois. Given

the facts noted above, Plaintiff is not entitled to take advantage of the retaliation

provision of the Massachusetts Wage Act by engaging in legally unsupportable forum

shopping.

1. **Plaintiff Cannot Prove her *prima facie* Case of Defendants' Alleged**
   **Retaliation Pursuant to the Massachusetts Wage Act.**

Defendants did not retaliate against Plaintiff for reporting concerns related to

alleged missing wages; Plaintiff was terminated for entirely legitimate business reasons

having nothing to do with Plaintiff's concerns. In order to prove her case of alleged

retaliation under the Massachusetts Wage Act, Plaintiff must prove: "(1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity. To satisfy the third element, there must be "a causal connection ... between the protected conduct and the adverse action." *Id.* at 723 (internal quotation marks and citations omitted)." Figueroa v. Cactus Mexican Grill LLC, 575 F. Supp. 3d 208, 217 (D. Mass. 2021) citing Blackie v. State of Me., 75 F.3d 716, 722-23 (1st Cir. 1996).

    *Even if* Plaintiff engaged in activity protected under the Massachusetts Wage Act, which is improbable as Plaintiff was not a Massachusetts resident at the time of her 2019 complaints regarding missing commissions (which were rectified by Defendants), Plaintiff was subjected a single adverse action, her termination. Plaintiff cannot point to any causal connection between her termination and her 2019 complaint. Even though Plaintiff re-hashed her 2019 complaints on April 27, 2021, Defendants had already made the decision to terminate Plaintiff due to her poor performance and Prompt Praxis' poor financial position. **Exhibit 6-Plaintiff's Responses to Defendants' Requests for Admission, Response 9, pg. 2.** The decision to terminate Plaintiff's employment was made between "early to mid-April", while discussions around terminating Plaintiff "started in probably March" 2021. **McChesney-Harris Depo, pg. 158, lines 14-24.** Plaintiff did not bring her concerns relating to retaliation until April 27, 2021, months after discussions regarding Plaintiff's termination began. As such, Plaintiff cannot rely on her complaint's temporal proximity to the termination to prove her claim. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 177 (1st Cir. 2015) (ruling that the Plaintiff's complaint's proximity to an alleged adverse action did not establish causation

because Defendant did not know of Plaintiff's protected conduct at the time of the adverse action). The logical fallacy of *post hoc ergo propter hoc* (after this, therefore because of this) permeates Plaintiff's complaint.

As of April 2021, Prompt Praxis had gone through four straight quarters of financial losses, primarily tied to the loss of Prompt Praxis' largest client during the COVID-19 Pandemic. **McChesney-Harris Depo, pg. 72, lines 15-24.** Prompt Praxis had to cut costs in order to survive as a company. Prompt Praxis sought out the highest and most expendable costs within the workforce. Plaintiff was the highest paid employee working for Prompt Praxis as of the beginning of 2021. **McChesney-Harris Depo, pg. 162, lines 4-19.** At the beginning of 2021, Plaintiff was put on notice of this downturn in an email to her from McChesney-Harris regarding Prompt Praxis' financial situation and the need to cultivate new clientele **Exhibit 5- Commissions 2020 Goals 2021 Email 18Jan2021.** At this time, Plaintiff was asked to provide an update on the status of clients at Prompt Praxis and their contribution to Prompt Praxis' financial status. **Exhibit 5- Commissions 2020 Goals 2021 Email 18Jan2021.**

Plaintiff's update, when it was finally delivered in late January 2021, noted that Plaintiff had not made any significant progress in signing new clients. **Exhibit 11-LMH Emails 18-22Jan20211048AM Roles and Processes.** Pertinently, Plaintiff had not signed any new clients; indeed, she had not sold any new services to any clients, old or new, since the beginning of 2020. Defendants also noticed that Plaintiff had a significant lack of understanding about Prompt Praxis' client offerings and had actively dissuaded clients from signing with Prompt Praxis due to her unprofessional attitude towards potential clients. **Exhibit 12-HDRX Trail 2 of 2.** Plaintiff's continued inability to garner

new business opportunities, as required by her job description, amplified by Prompt Praxis' poor financial state, caused the Defendants to terminate Plaintiff. Plaintiff's allegations of retaliation under the Massachusetts Wage Act cannot succeed inasmuch as the decision to terminate Plaintiff was factually based on her poor performance and Prompt Praxis' poor finances. Accordingly, Count IV of Plaintiff's Complaint should be dismissed with prejudice as to all Defendants.

### III.  CONCLUSION

Plaintiff failed to live up to the requirements of her job as a sales manager by not bringing in clients for over 16 months, while also being the highest paid employee at Prompt Praxis as of the time of her termination. Due to her inadequate performance and Prompt Praxis' failing finances, Defendants made a reasonable and necessary business decision when they terminated Plaintiff from her employment. Due to the legitimate business reasons for her termination, and the fact that Plaintiff was not a resident of Massachusetts, Plaintiff's claims cannot stand. Accordingly, all counts of Plaintiff's complaint must be dismissed with prejudice.

Respectfully Submitted,

   /s/ *Trevor Brice, Esq.*
Trevor Brice, Esq.
BBO No. 706213
Counsel for Defendants
Royal Law Firm LLP
33 Elliot Street
Springfield, Massachusetts 01105
Tel. (413) 586-2288/Fax (413) 586-2281
Dated:  March 6, 2024        E-mail:  TBrice@theroyallawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Memorandum in Support of Defendants' Motion for Summary Judgment* was served upon the attorney of record for each other party via the Court's CM/ECF Electronic Case Filing System on March 6, 2024.

_/s/ Trevor Brice, Esq._
Trevor Brice, Esq.