UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10750-RGS

LOREN O.E. NIKOLAI HALSTEN

v.

PROMPT PRAXIS LABORATORIES, LLC and
LISA McCHESNEY-HARRIS

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

April 11, 2024

STEARNS, D.J.

From January of 2019 to May of 2021, Loren Halsten was the National Sales and Business Manager at Prompt Praxis Laboratories, LLC (PPL). After PPL terminated her, Halsten sued PPL and its CEO, Lisa McChesney-Harris, in Suffolk Superior Court, alleging that defendants retaliated against her in violation of Mass. Gen. Laws ch. 151B, 42 U.S.C. § 2000e-(3)(a), and Mass. Gen. Laws ch. 149, § 148A (Counts I, II, and IV), and failed to pay her commissions earned in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Count III). Defendants timely removed the case to the U.S. District Court. They now move for summary judgment. The court will allow the motion in part and deny it in part.

## BACKGROUND

PPL, a small lab testing company headquartered in suburban Chicago, hired Halsten in January of 2019.  She earned a base salary and was eligible to receive commissions of 5% of new business revenue.  Pl.'s Statement of Genuine Issues of Material Facts (HSMF), Ex. B (Dkt. # 58-1).  When Halsten started at PPL, she lived in Tennessee.  She moved to New York shortly after and relocated to Massachusetts in March of 2020.

Halsten claims that soon after she started at PPL, her supervisor, Steve Aragon, made unwelcome sexual comments to and about her.[1]  She reported the harassment to PPL's CEO Lisa McChesney-Harris and the human resources department in October of 2019.  After investigating the allegations, PPL concluded that they were unsubstantiated,[2] but it provided Aragon counseling, required that he attend external sensitivity training, retrained the staff on sensitivity, and updated its harassment policy.  *See* Defs.' Mem. in Support of Their Mot. for Summ. J. (Mot.), Ex. 3 (Dkt. # 54-4).

---

[1] She reported that Aragon (1) "made a comment of a salacious nature" about the type of dessert a hotel was offering; (2) asked Halsten "why she did not dress like that," referring to a woman wearing a "short and tight skirt"; and (3) intimated that Halsten needed to sleep with a potential client to secure their business.  Mot., Ex. 3 (Dkt. # 54-4).

[2] Halsten also claims that McChesney-Harris told her that Aragon "didn't do those things," and that the incidents were Halsten's "perception and not reality."  HSMF ¶ 4.

Around the same time, Halsten noticed that she was not receiving commission payments she was due. HSMF ¶ 6. She reported the nonpayment to McChesney-Harris, and PPL corrected the issue in January of 2020. Defs.' Statement of Material Facts (DSMF) (Dkt. # 55) ¶ 20.

Halsten alleges that after she reported the harassment and unpaid commissions, PPL began retaliating against her. According to Halsten, McChesney-Harris was hostile toward her,[3] failed to timely respond to questions, and stopped providing her with client invoices. HSMF ¶¶ 6, 10-12. She also claims that PPL failed to pay her commissions for revenues generated by KRS Global Biotechnology (KRS), a new client that Halsten says she recruited. *Id.* ¶ 8. Halsten reported the retaliatory behavior to Rebecca Kolleng, PPL's Human Resources Manager, on April 27, 2021. DSMF ¶ 22.

For their part, defendants claim that Halsten had serious performance issues. For example, in April of 2020, Halsten emailed a potential client criticizing his "chastising note" as "unbecoming and unnecessary." Mot., Ex. 12 (Dkt. # 54-13). On January 18, 2021, McChesney-Harris notified

---

[3] The record does not clearly spell out the treatment that Halsten believes was hostile. An investigation report suggests McChesney-Harris made an analogy involving cookies and girl scouts that Halsten felt was "beyond the bounds of human decency," and that Halsten believed McChesney-Harris exhibited "relentless condescension" and "vitriol" when asking about the status of a potential new client. Mot., Ex. 4 (Dkt. # 54-5).

3

Halsten that PPL was struggling financially and that Halsten needed to "yield many more clients this year than last year." Mot., Ex. 5 (Dkt. # 54-6). But when McChesney-Harris and PPL's Senior Vice President Cecilia Newcomb-Evans reviewed Halsten's performance in April of 2021, they "found an alarming lack of progress." Mot, Ex. 4. McChesney-Harris and Newcomb-Evans decided to terminate Halsten in April of 2021. *Id.* As luck would have it, Newcomb-Evans emailed Kolleng setting a timeframe to terminate Halsten earlier on the same day that Halsten filed her complaint with Kolleng. *Id.*

Despite having decided to terminate Halsten, Kolleng investigated her complaints. Kolleng interviewed and collected documentation from Halsten and McChesney-Harris and requested data from Halsten's email and SalesForce accounts. *See id.* After reviewing emails between Halsten and McChesney-Harris, Kolleng found no evidence of retaliatory harassment. *See id.* She also concluded that Halsten was not entitled to commission on the KRS account because Halsten did not bring in KRS as a client. *See id.* PPL terminated Halsten on May 10, 2021.

Nine days after her termination, Halsten filed a small claims complaint against PPL in the Boston Municipal Court (BMC) seeking to collect on wages owed to her on the day of her termination. *See* Mot., Ex. 9 (Dkt. # 54-10).

4

The BMC found that PPL failed to pay uncontested wages owed to her on the day of her termination.[4]

## DISCUSSION

Summary judgment is warranted where the movant demonstrates that the record, "construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" *Lawless v. Steward Health Care Sys.*, 894 F.3d 9, 20-21 (1st Cir. 2018), quoting *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). A factual dispute is "genuine" if there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of truth at trial." *First Nat. Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

**Choice of Law**

Defendants first contend that Halsten cannot seek the protection of the Massachusetts Wage Act because she was not a resident of Massachusetts when she engaged in protected activity.[5] Massachusetts choice of law rules

---

[4] Defendants contend that Halsten also sought to recover unpaid commissions before the BMC. The court has already rejected this argument. *See Halsten v. Prompt Praxis Lab'ys, LLC*, 2023 WL 4471831, at *2-3.

[5] The court does not understand defendants to be raising this as a personal jurisdiction defense, but to the extent that they are, such a defense is waived as untimely. *See* Rule 12(b).

guide the analysis. *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017). Although Halsten's claims arise under different substantive bodies of law (her unpaid commission claim sounds in contract, but her retaliation claims sound in tort), the analysis is essentially the same for all claims. *See Bushkin Assocs. v. Raytheon Co.*, 393 Mass. 622, 632 (1985) (where a contract does not specify choice of law, question is what state has the "most significant relationship" to the contract); *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 647 (1994) (choice of law for tort claims asks which state has a "more significant relationship" to the occurrence).

Considering the relevant factors, the court concludes that Halsten may avail herself of Massachusetts law. It is true that defendants are located in Illinois, and Halsten was not a Massachusetts resident at the time she entered her employment contract. However, her performance that gave rise to the allegedly unpaid commissions occurred in Massachusetts, and her alleged protected conduct occurred while she was in Massachusetts. Massachusetts public policy also favors application of Massachusetts law: while Illinois law allows limited punitive damages for wage claims, Massachusetts law provides for treble damages.[6] *Compare, e.g.*, 820 Ill.

---

[6] While policy considerations would not be relevant if Massachusetts "ha[d] no interest in the case apart from the fact that it is the place of the trial of the action," Restatement (Second) of Conflict of Laws § 6 cmt. e, Halsten

Comp. Stat. 115, *with* Mass. Gen. Laws ch. 149, § 148. PPL permitted Halsten to work where she wished, and it acknowledged that different states have different employment laws. *See* HSMF, Ex. Q. It thus had no justified expectation that Illinois law would apply to an employment dispute. *See* Restatement (Second) of Conflict of Laws § 6(2)(d). And dismissing Halsten's claims, leaving her "without an effective remedy," "would lead to a result contrary to [Massachusetts's] fundamental policy" of fairly compensating employees. *Feeney v. Dell Inc.*, 454 Mass. 192, 208 (2009).

**Counts I, II, and IV:  Retaliation**

Halsten's retaliation claims proceed under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Halsten must first establish a prima facie case of retaliation by showing that "she undertook protected conduct," defendants "took a material adverse action against her," and "a causal nexus exists between elements one and two." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013); *see also Mole v. Univ. of Massachuestts*, 442 Mass. 582, 591-592 (2004). If she makes this showing, the burden shifts to defendants to articulate a legitimate, non-retaliatory explanation for their actions. *See*

---

was a resident of Massachusetts and paying taxes to the Commonwealth when she alleges she was not paid commissions due, *see* HSMF ¶ 27.

*Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 175 (1st Cir. 2015). If they do so, the burden shifts back to Halsten to show defendants' reason is pretextual. *See id.* Halsten must "point to *some* evidence of retaliation by a pertinent decisionmaker."[7] *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997).

The temporal proximity between Halsten's April 27 complaint and May 10 termination is sufficient to make out a prima facie case of retaliation.[8] *See Planadeball*, 793 F.3d at 178. Defendants also carry their counter-burden. Halsten's April 2020 email to a potential PPL client and the evidence that she was lagging in sales are legitimate, non-discriminatory reasons to terminate her. *See id.* at 179.

The court finds, after exercising "particular caution" and viewing the record in the light most favorable to Halsten, that there is no genuine question of material fact on Halsten's claim of pretext. *See Ray v. Ropes & Gray LLP*, 799 F.3d 99, 116 (1st Cir. 2015), quoting *Straughn v. Delta Air*

---

[7] For her federal claim, Halsten must show retaliatory animus at the third step, but for her state claims, she need not offer evidence of animus. *See Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 26 (1st Cir. 2004); *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995).

[8] Halsten contends she complained to McChesney-Harris in 2020 and 2021. This is protected conduct, but complaints from 2020 are insufficiently proximate to infer retaliation. *See Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 32 (1st Cir. 2019) (four-month gap insufficient to infer causal nexus).

8

*Lines, Inc.*, 250 F.3d 23, 34 (1st Cir. 2001). Halsten points to several facts she believes show pretext: temporal proximity between her complaints and her termination, her belief that McChesney-Harris became hostile after her sexual harassment complaint, and their previous disputes over the KRS account commission. None is availing.

To the extent that McChesney-Harris was hostile to Halsten (and defendants dispute that she was), the three examples cited by Halsten appear to be "petty slights" and "simple lack of good manners." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). No reasonable juror could conclude from three comments made to Halsten over an 18-month period, two of which had nothing to do with her complaints, that McChesney-Harris was retaliating against her.[9] Further, it is not clear (nor does Halsten explain) how McChesney-Harris denying her a commission on the KRS account shows pretext. And as Halsten's first two arguments fail, her temporal proximity must also fail. *See Planadeball*, 793 F.3d at 179 (temporal proximity, standing alone, does not show pretext); *Mole*, 442 Mass. at 595 (same).

---

[9] The only comment relating to Halsten's complaints – McChesney-Harris allegedly telling Halsten that the incidents with Aragon were her "perception and not reality" – is disputed by defendants, uncorroborated by the record, and occurred more than one year before Halsten was terminated.

9

This conclusion is further bolstered by Halsten's performance issues percolating in the background and by the fact that PPL had decided to terminate her before she made the April 27 complaint. Indeed, she does not identify a single positive performance review. Although she likely experienced occasionally less-than-ideal treatment from her supervisor, this does not show pretext. Accordingly, Counts I, II, and IV are dismissed.

**Count III: Unpaid Commissions**

Halsten alleges that PPL underpaid her for two commissions – one for revenue generated by a BayCare Health Systems account, and one for revenue generated by an SCA Pharmaceuticals account – and that she received no commission on the KRS account. Defendants' motion does not address her claims regarding BayCare and SCA.[10] And the parties genuinely dispute whether Halsten brought in KRS as a client.[11] Although Kolleng

---

[10] In their Reply, defendants argue that Halsten is not entitled to commissions for the BayCare and SCA accounts. These arguments are waived. *See Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999). And even if they were not, in both instances, defendants wrongfully shift the burden to Halsten to show, in the first instance, that she is owed commissions. *E.g.*, Defs.' Mem. of Law in Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Dkt. # 60-1) at 9 n.3.

[11] Halsten did not, as defendants argue, "admit[] during an investigation into this allegation that any issue with payment 'was resolved.'" *See* Mot. at 12. She stated that the commission payment issue she reported in 2019 was resolved, but she maintained that she was owed commissions from the KRS account.

10

determined that Halsten was not entitled to a commission from the KRS account, Halsten raises a triable question of fact of whether she initiated negotiations with KRS. *See* HSMF, Ex. B. Halsten's employment contract is very thin on the requirements for a commission payment, further exacerbating the issue. Her contract provides for payment of 5% of "new business revenue based on paid invoices," but it does not state what she must do to secure a commission. *Id*. Summary judgment thus cannot be granted on Count III.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>. Counts I, II, and IV are hereby DISMISSED.

SO ORDERED.

/s/ Richard G. Stearns  
UNITED STATES DISTRICT JUDGE